[No. A026049. First Dist., Div. Three. Feb. 5, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO RAMIREZ et al., Defendants and Appellants.

## COUNSEL

Scott T. Carss and Thomas W. Perley, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, and Blair Hoffman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BARRY-DEAL, J.**—A jury found appellants guilty of attempted forcible rape in concert (Pen. Code, §§ 664/261, subd. (2)[1]), two counts of assault

---

[1]All further statutory references are to the Penal Code.

with intent to commit oral copulation (§ 220), and two counts of forcible rape in concert (§§ 261, subd. (2), 264.1). The jury acquitted appellants on a robbery count, found not true an allegation that appellant Bravo used a knife, and was unable to reach a verdict on a charge of kidnaping. Appellant Ramirez admitted a prior prison term. The court sentenced each appellant to a prison term totaling 15 years. On appeal appellant Bravo contends that the case must be remanded for resentencing because of the trial court's failure to state adequate reasons for its sentence choice. We find that the point is well taken as to both appellants.

### The Facts

On the night of August 20-21, 1983, the victim, Irma E., a Sonoma State University student, age 27, was visiting her two sisters, Linda and Delme, in Salinas. The three women went to a local nightclub and left about closing time, at 2 a.m. After driving Delme home, Irma and Linda stopped at a supermarket parking lot in Salinas where people gathered on Saturday nights. They talked to some people for a few minutes and then decided to leave, but when they tried to drive away, their car developed a flat tire. After they changed the tire with the help of two unidentified men, Irma and Linda were approached by appellants. Appellant Ramirez agreed to take Irma to buy some marijuana; Bravo and Linda remained in the parking lot in Irma's car. After an unsuccessful attempt to buy some marijuana, Ramirez and Irma returned to the parking lot, but Linda was not there. Bravo got into the car and stated that Linda had left him there "to get beat up." He was angry and told Irma she would have to "pay" because her sister "was cold-blooded."

Ramirez, also known as Frank or Poncho, and Bravo, also known as Leo, drove Irma to a dirt road and forced her to engage in sexual intercourse with each of them. The two men pulled her clothes off and threatened her with something that she thought was a knife. Bravo also tried to force Irma to copulate him orally and tried to jam her head into his lap and then into Ramirez'. Irma resisted, refusing to help in any way, and stated that they could kill her first. Ramirez threatened her with sodomy if she did not comply, and he also threatened to take her to his friends, impliedly for further sexual abuse.

After the sex acts were completed, they all got dressed and drove off. Irma told them she had to use the bathroom, so they pulled into the parking lot of the Laurel Inn. As Irma was getting out of the car, she asked for $20, which she said was missing. Ramirez pretended to look for the money, but told her he couldn't find it. The men then drove away.

Irma saw two police officers in the motel's restaurant. She sat down next to them and wrote down the license plate number of the car driven by appellants.

The police took her to the hospital, where she underwent a rape examination. A criminalist testified that the physical examination showed the presence of spermatozoa which was consistent with Ramirez' and Bravo's blood types.

The victim's sister Linda, age 21, corroborated her testimony. Salinas Police Sergeant Larry Manolo testified that when the victim approached him on the night in question, she was "distraught, emotionally upset, and was trembling." When arrested, appellant Bravo presented an alibi and denied knowing Ramirez, who in fact is his first cousin. When he was arrested, appellant Ramirez stated that he had not seen Bravo for a month, and he gave a fictitious name.

Appellant Ramirez testified on behalf of the defense. He admitted that both he and Bravo had sexual intercourse with the victim, but claimed that both acts were consensual. He testified that he thought Irma wanted to have sex, because she had told him she had a boyfriend, but "don't worry about it," and she had put her hand on his leg. Ramirez testified that he found Irma's missing $20 on the floor of the car after she went into the restaurant, but that he was afraid to take it to her because she was talking to the police and he was on parole for grand theft.

Other pertinent facts are developed in the discussion.

## Discussion

 Appellant Bravo contends that the case must be remanded for resentencing because the trial court failed to state adequate reasons for imposing consecutive sentences generally and failed to state adequate reasons for imposing a full and consecutive sentence under section 667.6, subdivision (c).

The trial court sentenced both appellants to the same fifteen-year term, as follows: on count four (assault with intent to commit oral copulation), the court imposed the upper base term of six years and then imposed two concurrent sentences (four years and six years) on counts two and three (attempted forcible rape in concert and assault with intent to commit oral copulation); on counts five and six (forcible rape in concert), the court imposed the upper base term of nine years each, to run concurrent to each

other, and stated that this nine-year term should run fully and consecutively to the terms established for counts four, two, and three.

The court gave as its reason for selecting the upper base term on count four, ". . . all three could be consecutive, and it seems to me fair to have—rather than have three of the terms consecutive, that the one upper term is appropriate." In stating its reasons for imposing a full and consecutive term as to counts five and six, the court said, ". . . I saw the witness, and obviously the threats to her in the sense of sodomizing her, forcing her to commit oral copulation, of taking her to others to allow them to rape her, aggravated this, the crime, in my opinion. [¶] In addition, those two, Counts Five and Six, could run consecutive, and because I'm having them, I'll have those two run concurrent with each other, I feel the upper term is appropriate." The court also cited appellant Ramirez' prior record as a factor which it considered in sentencing him.

As to appellant Bravo, the court noted that his priors are "not as bad," but stated, ". . . I feel that the defendants were equally at fault in this happening, and they should be treated the same. The reasons for Mr. Bravo's sentence, aside from the not having the three priors, are the same as for Mr. Ramirez."

■ In this case, the trial court made at least three sentence choices which required its giving a statement of reasons. (§ 1170, subd. (c).) In selecting the upper base terms, the court cited, as a circumstance in aggravation, the fact that the terms could have been imposed to run consecutively. While this factor is a valid consideration (Cal. Rules of Court, rule 421(a)(7)), the court failed to state the underlying rationale for its sentence choice, that is, the reason that the terms could have been imposed consecutively.

■ In deciding to sentence appellants under section 667.6, subdivision (c), the court, in essence, was making two sentencing choices. The first was to sentence appellants consecutively generally, and the second was to sentence them under section 667.6 rather than the more lenient section 1170.1. (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 346-347 [193 Cal.Rptr. 882, 667 P.2d 686].)

While it is true that in making these two discrete sentence choices the trial court may properly use the same criteria, that is, those listed in rule 425, incorporating rules 421 and 423, California Rules of Court, "[w]hat is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). The crucial factor . . . is that the record reflect recognition on the part of the trial court

that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*People* v. *Belmontes, supra,* 34 Cal.3d at p. 348, fn. omitted.)

The record before us reveals that the trial court did not engage in this required two-step process. The court's reference to the threats to the victim can, of course, be construed as a statement of criteria affecting the decision to impose consecutive sentences generally (Cal. Rules of Court, rule 425(a)(2)). But this is only the first step required by *Belmontes.* Here the court failed to make a record showing its reasons for the "separate and additional choice in sentencing under section 667.6, subdivision (c)."

It is for this reason the People's argument that the trial court chose to impose full and consecutive terms because of the threats of harm made to the victim is not convincing. Nor are we persuaded by the People's argument that the trial court's failure to state its reasons is a mere technical error not requiring a remand for resentencing. The provisions of section 667.6, subdivision (c), are highly punitive, and when its provisions are to be utilized, a clear statement of reasons is required. (*People* v. *Belmontes, supra,* 34 Cal.3d 335, 347-349.)

Regarding the appeal of appellant Ramirez, we have complied with counsel's request that we independently review the entire record. (*People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071].) Other than the sentencing error, there are no arguable issues presented by this record.

The judgments of conviction are affirmed. The sentences of the trial court are vacated, and the cause is remanded for resentencing of both appellants in accordance with the views expressed herein.

White, P. J., and Scott, J., concurred.